Opinion
 

 ROTH, P. J.
 

 This appeal is from summary judgment against appellant on March 16, 1977,
 
 [1]
 
 predicated on the ground that appellant’s action for
 
 *827
 
 medical negligence (malpractice) against respondent filed April 14, 1975, was barred by the time limitations contained in Code of Civil Procedure section 340.5.
 

 The facts are undisputed.
 

 Appellant was respondent’s patient from September 11, 1961, until early 1971. In July 1970, appellant was hospitalized with a fractured left hip. Surgeries were performed by respondent in connection therewith in July and October of 1970; appellant was discharged from the hospital December 31 of the same year and respondent’s last contact with her consisted of a postoperative visit on February 8, 1971. In May 1974, appellant’s left leg being found nonviable was surgically removed at the UCLA Medical Center.
 

 From its inception in 1970 and until substantially amended in 1975, Code of Civil Procedure section 340.5 provided: “In an action for injury or death against a physician or surgeon, dentist, registered nurse, dispensing optician, optometrist, registered physical therapist, podiatrist, licensed psychologist, osteopath, chiropractor, clinical laboratory bioanalyst, clinical laboratory technologist, veterinarian, or a licensed hospital as the employer of any such person, based upon such person’s alleged professional negligence, or for rendering professional services without consent, or for error or omission in such person’s practice, [the statute of limitation is] four years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever first occurs. This time limitation shall be tolled for any period during which such person has failed to disclose any act, error, or omission upon which such action is based and which is known or through the use of reasonable diligence should have been known to him.”
 

 
 *828
 
 It is conceded the present action turns upon the proper construction of this statute. In making our construction, we are bound by the reasoning contained in
 
 Larcher
 
 v.
 
 Wanless
 
 (1976) 18 Cal.3d 646 [135 Cal.Rptr. 75, 557 P.2d 507] and in
 
 Sanchez
 
 v.
 
 South Hoover Hospital
 
 (1976) 18 Cal.3d 93 [132 Cal.Rptr. 657, 553 P.2d 1129].
 
 Larcher
 
 analyzed and construed the application of section 340.5 in a case involving wrongful death. The
 
 Larcher
 
 court discussed the meaning of the word “injury” as used in the statute and fixed manifest “injury” as distinguished from “wrongful act” as the event which starts the running of the overall four-year limitation period and the event of discovery, actual or presumptive, as the commencement date of the one-year statute of limitation. The court observed:
 

 “Defendants seem to argue from the premise that the undiluted purpose of section 340.5 was to lower malpractice insurance rates by enabling insurers to reduce the amount of reserves they need maintain to meet potential claims. They urge that because a statute of limitations in wrongful death actions which extinguishes a large number of claims before they accrue might substantially curtail malpractice exposure, the legislation should be construed in conformity with that end.
 

 “But section 340.5 evinces no such single-minded purpose. Instead, as originally worded, the statute appears to have been a compromise between concern over the extended exposure of medical practitioners to malpractice liability and a desire not to bar potentially worthy plaintiffs from court before they have a fair chance to bring suit. The Legislature declined to adopt other proposals before it which held out the promise of substantially greater reductions in malpractice exposure and necessary insurance reserves. Thus the Legislature did not date the limitation period from the ‘alleged wrongful act,’ as provided in one proposal. (Assem. Bill No. 135 (1969 Reg. Sess.).) Instead, the limitation period was tied to ‘injury,’ a word of art which might refer to an event occurring some time after the commission of a ‘wrongful act.’
 
 [11]
 

 
 *829
 
 "
 

 “However, as with other medical malpractice actions, the Legislature sought to limit the length of time for which the discovery rule could perpetuate the possibility of suit by providing an alternative, overall four-year limitation period beginning with the date of that ‘injury.’14”
 

 Similarly, in
 
 Sanchez,
 
 while concluding the one-year limitation of section 340.5 is governed by a plaintiff’s actual or constructive awareness while the four-year limitation is contingent upon lack of a defendant’s concealment, the court reasoned: “In fact, the word ‘injury’ had come to be used in the cases to denote both a person’s physical condition
 
 and
 
 its ‘negligent cause.’ (E.g.,
 
 Stafford
 
 v.
 
 Shultz, supra,
 
 42 Cal.2d at pp. 776-777 [270 P.2d 1];
 
 Mock
 
 v.
 
 Santa Monica Hospital, supra,
 
 187 Cal.App.2d at p. 64 [9 Cal.Rptr. 555].) We think that the Legislature in enacting section 340.5 intended no more than to adopt the prior ‘discovery’ rule, and that the word ‘injury’ retained, in the context used, the broad meaning the courts had previously given to it.”
 
 (Sanchez
 
 v.
 
 South Hoover Hospital, supra,
 
 18 Cal.3d 93, 99.)
 

 Thus under
 
 Larcher
 
 and
 
 Sanchez, supra,
 
 the inception of the limitation periods set out in section 340.5 embraces not only discovery in the case of the one-year period and disclosure in the case of the four-year period but also the fact of injury with respect to both
 
 [2]
 
 This being the case,
 
 *830
 
 and since injury and the wrongful act which caused it are separate legal concepts and are not in every instance simultaneous, it is not true that the passage of four years since the last treatment of a patient by a physician necessarily fixes the event of injury and thus requires the patient’s malpractice action to fail.
 

 Neither
 
 Larcher
 
 nor
 
 Sanchez
 
 addressed the particular issue presented by the case at bench, to wit: the precise point at which a plaintiff in a medical malpractice action for personal injury is “injured” to the extent that the four-year limitation period begins to run.
 

 True, in both
 
 Larcher
 
 and
 
 Sanchez
 
 there is considerable discussion concerning the meaning of the word “injury.” That discussion, however, must be analyzed in the context of the issue with which the court was dealing in each case.
 

 If one were to simply lift the language from those cases concerning the definition of injury and apply it without analysis to all situations, the result would render the four-year limitation meaningless. It must be presumed that the Legislature did not engage in an idle or meaningless act when it inserted an overall four-year cutoff in these types of actions.
 

 The tenor of
 
 Sanchez
 
 was a circumscription of plaintiff’s right to pursue an action for personal injury in a medical malpractice case. The holding of
 
 Sanchez
 
 was simply that the “one year from discovery” limitation period was not tolled by concealment on the part of tibe defendant.
 

 The holding of
 
 Larcher
 
 was that in
 
 wrongful death actions
 
 based on medical malpractice the “one year discovery” period commenced to run on the
 
 death
 
 of the patient and was not shortened by the fact that the “injury” was discovered prior to death.
 

 For our purposes here, the key holding of both
 
 Sanchez
 
 and
 
 Larcher
 
 is that “injury” is not synonymous with “wrongful act.” The most apt description of the concept is found in a footnote at page 656 of
 
 Larcher, supra,
 
 where it is stated that the word “injury” refers to “damaging effect
 
 *831
 
 of the alleged wrongful act” and that until plaintiff “suffers appreciable harm” he cannot establish a cause of action.
 

 In our case, the parties agree that “injury” is not a “wrongful act.” They also agree that a person is “injured” when the damaging effect or pathology first manifests itself regardless of any knowledge on plaintiff’s part that it was negligently caused.
 

 Defendant takes the position that the date of injury has to be the last time that he was in a position to have caused the injury, to wit; the last treatment date. Plaintiff, on the other hand, takes the position that the “ultimate result,” to wit; the amputation, is the date of injury. Both are wrong.
 

 Each case necessarily will turn on its own particular circumstance. It could well be that an injury or pathology will not manifest itself for some period after the last treatment by a physician. On the other hand, that injury or pathology may manifest itself and the patient will suffer known appreciable harm at a time prior to the “ultimate” result. In the latter case, the four-year period will start to run at the point at which the “appreciable harm” is first manifested.
 

 At bench, in his renewal motion for summary judgment, respondent’s supporting declaration, which we assume for the purpose of this decision to be true, asserts only that he did not conceal or fail to disclose any injury or possible injury to appellant resulting from his treatment of her.
 

 The issue at bench has to do with appellant’s allegation that “. . . plaintiff was not aware of the negligent treatment received at the hands of the defendants and each of them, until May 1974, when she was advised that her left leg was not viable and it would be necessary to remove the left leg.”
 

 Nothing in respondent’s supporting declarations denies that the amputation of appellant’s leg was, as she alleges, the injury she suffered, nor is there anything in the declarations which suggests that appellant suffered any other injury prior thereto caused by respondent, either manifest or of which there was evidence that appellant as a reasonably prudent person should have had notice. Respondent’s statements viewed most advantageously'are insufficient to effectively negate the existence of the triable issue of fact respecting the crucial element of injury and consequently cannot provide an adequate basis for summary judgment in
 
 *832
 
 respondent’s favor. This is so even though no sufficient counteraffidavits were proffered by appellant. Although it is settled that an opponent’s failure to file such affidavits admits the truth of the movant’s declarations
 
 (Brewer
 
 v.
 
 Reliable Automotive Co.
 
 (1966) 240 Cal.App.2d 173 [49 Cal.Rptr. 498]; see also
 
 Sanchez, supra,
 
 at p. 107 (dis. opn.)), it does not follow such failure requires granting of the motion. Code of Civil Procedure section 437c provides in pertinent part:
 

 “Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense thereto.
 

 “The motion shall be supported or opposed by affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken.
 

 “Such motion shall be granted if all the papers submitted show that there is
 
 no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.” (Italics added.)
 

 The analysis of section 340.5 and its essential components made above indicates that the limited scope of respondent’s declaration does not meet the requirements of section 437c.
 

 The judgment is reversed.
 

 Fleming, J., and Compton, J., concurred.
 

 A petition for a rehearing was denied August 7, 1978, and respondent’s petition for a hearing by the Supreme Court was denied September 14, 1978.
 

 [1]
 

 Respondent first filed his motion for summary judgment on November 12, 1976. That motion was denied without prejudice to renew by the trial court’s minute order of
 
 *827
 
 December 10, 1976, wherein it incisively stated:
 

 “Here, the problem is when was the ‘date of injury,’ which was not briefed by counsel.
 
 If, as a matter of law, the ‘date of injury’ is not later than the. last day Dr. Burton saw plaintiff,
 
 and if he negatives concealment (not yet done), then the motion is probably good.
 

 “If
 
 however,
 
 the ‘date of injury’ is when the negligence alleged manifested itself into damage
 
 to the plaintiff, then insufficient facts are alleged.” (Italics added.)
 

 The summary judgment of March 16, 1977, was the result of a renewed and somewhat revised motion for summary judgment and/or judgment on the pleadings filed by respondent on February 10, 1977.
 

 [11]
 

 "Thus the word ‘injury,’ as used in section 340.5 to denote the start of the four-year limitation period, seems clearly to refer to the damaging effect of the alleged wrongful act and not to the act itself. As we noted in
 
 Budd
 
 v.
 
 Nixen
 
 (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433], ‘The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence.’
 
 Budd
 
 was an attorney malpractice case, but its rationale seems equally applicable to medical malpractice. Until the patient ‘suffers appreciable harm’ as a consequence of the alleged act of malpractice, he cannot establish a cause of action. ‘ “It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred.” ’
 
 (Id.,
 
 at p. 201, quoting from Prosser, Law of Torts (4th ed. 1971) § 30, p. 144; see also
 
 Huysman
 
 v.
 
 Kirsch
 
 (1936)
 
 *829
 

 supra,
 
 6 Cal.2d 302, 309 [57 P.2d 908];
 
 Davies
 
 v.
 
 Krasna
 
 (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161].)”
 

 “14It is to be presumed, of course, that the Legislature intended the word ‘injury’ to have the same meaning in the parallel four-year and one-year limitation periods of the statute. Moreover, ‘injury’ as used in the four-year provision is to be construed in light of the same precedents which give meaning to the word as it appears in the one-year provision.”
 
 (Larcher
 
 v.
 
 Wanless, supra,
 
 18 Cal.3d 646, 655-656, 658.)
 

 [2]
 

 Neither
 
 Wells Fargo Bank
 
 v.
 
 Superior Court
 
 (1977) 74 Cal.App.3d 890 [141 Cal.Rptr. 836], nor
 
 Blake
 
 v.
 
 Wernette
 
 (1976) 57 Cal.App.3d 656 [129 Cal.Rptr. 426], is at odds with this conclusion. In the former, the court noted:
 

 “Before the advent of section 340.5 the period of limitations on medical malpractice actions had been one year from the date of the injury’s discovery. (See generally, 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 316, pp. 1158-1160.) The 1970 version of section 340.5 preserved the one-year discovery rule but circumscribed it with an outer limit of four years.
 
 (Larcher
 
 v.
 
 Wanless
 
 (1976) 18 Cal.3d 646 . . . .) The four-year rule in turn was tempered by the statute’s last sentence, tolling the four-year period if the physician concealed the harm.
 
 (Sanchez
 
 v.
 
 South Hoover Hospital
 
 (1976) 18 Cal.3d 93, 101 . . . .) (3) The ‘injury’ which placed the four-year period in motion was the damaging effect of the wrongful act rather than the act itself.
 
 (Larcher
 
 v.
 
 Wanless, supra,
 
 18 Cal.3d at 656, fn. 11.)”
 
 Bank,
 
 74 890, 895-896.)
 

 In the latter, no question was raised concerning when plaintiff’s injury occurred. The court’s circumscription of the previous judicially declared “discovery rule” was correctly
 
 *830
 
 imposed when it is understood that rule had included as its components both injury and its negligent cause.
 

 Nor do we view
 
 Scott
 
 v.
 
 County of Los Angeles
 
 (1977) 73 Cal.App.3d 476 [140 Cal.Rptr. 785] as contrary, since the reasoning supporting our decision there presupposed the existence of an injury sufficient to initiate the outer limitation period.