[No. D011128. Fourth Dist., Div. One. Mar. 14, 1991.]

JOYCE MASON, Plaintiff and Appellant, v.
MARRIAGE AND FAMILY CENTER et al., Defendants and
Respondents.

538

**COUNSEL**

David D. Miller and Patricia I. James for Plaintiff and Appellant.

Jaret, Caudill & Kuehn and James C. Chaney for Defendants and Respondents.

## OPINION

**BENKE, J.—**

### INTRODUCTION

Appellant Joyce Mason appeals from a summary judgment. She argues a triable issue of fact exists as to when respondent's alleged malpractice caused her injury. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 1977, Mason became a patient of respondents Dr. Charles E. Hansen and Susan Hansen. Charles Hansen is a licensed clinical psychologist. His wife Susan Hansen is a licensed marriage, family and child counselor. Together the Hansens practiced as the Marriage and Family Center.

Mason claims that in 1983, during her therapist/patient relationship with the Hansens, Charles Hansen initiated a sexual relationship with her. According to Mason, Charles Hansen represented to her that the sexual contact was consistent with or a part of her therapy. In a declaration filed in opposition to the Hansens' motion for summary judgment, Mason states she trusted Charles Hansen, was dependent upon him and had no reason to doubt his word.

By July 1, 1985, Mason's therapeutic relationship with the Hansens had ended. Mason and Charles Hansen did not see each other after that date.

According to her declaration, in 1986 and 1987 Mason began to suffer various types of mental and emotional distress. She described the distress as "anxiety, nervousness, sleeplessness, nausea, headaches, depression and stress." At the time Mason began to experience this distress she did not understand why it was occurring.

In February 1987 Mason began seeing a psychiatrist, R. Larry Schmitt, M.D. Schmitt treated Mason and her boyfriend Dave Reardon together. On April 13, 1988, Mason saw Schmitt alone and for the first time disclosed to Schmitt her sexual relationship with Charles Hansen.

At the April 13, 1988, session, Schmitt advised Mason that Charles Hansen's conduct was inappropriate and abusive. According to Schmitt's declaration, he does not believe Mason knew she had been injured by Charles Hansen's conduct until the April 13, 1988, session.

On July 5, 1988, Mason served the Hansens with the notice of intention to file suit required by Code of Civil Procedure section 364.[1] On October 4, 1988, Mason filed a complaint for professional negligence against the Hansens.

On June 5, 1989, the Hansens moved for summary judgment. Relying on answers to interrogatories Mason had provided, the Hansens argued her claim was time barred under the provisions of section 340.5. In opposing the motion, Mason submitted an amendment to the interrogatory answers the Hansens had relied upon.

The trial court granted the Hansens' motion and entered a judgment in their favor. Mason filed a timely notice of appeal.

## ISSUE ON APPEAL

The principal issue we confront on appeal is whether Mason suffered an injury within the meaning of section 340.5 more than three years prior to commencing her action. Because we do not believe this record resolves that question, we reverse the summary judgment.

## DISCUSSION

### I

■ "The summary judgment procedure, inasmuch as it denies the right of the adverse party to a trial, is drastic and should be used with caution. [Citation.] Summary judgment is properly granted only when the evidence in support of the moving party establishes that there is no issue of fact to be tried. [Citations.]

■ " 'The moving party bears the burden of furnishing supporting documents that establish that the claims of the adverse party are entirely without merit on any legal theory.' [Citation.] 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion.' [Citation.] '. . . [I]ssue finding rather than issue determination is the pivot upon which the summary judgment law turns.' [Citation.]" (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134].)

With these general guidelines in mind, we turn to Mason's appeal.

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

## II

Section 340.5 provides in pertinent part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person."[2]

The parties do not dispute section 340.5 governs Mason's claims. Rather the parties' sole dispute is whether Mason's complaint was filed more than three years after she suffered "injury" within the meaning of section 340.5.

In discussing when an "injury" occurs within the meaning section 340.5, the Supreme Court stated: "[T]he word 'injury,' as used in section 340.5 to denote the start of the . . . limitation period, seems clearly to refer to the damaging effect of the alleged wrongful act and not to the act itself. As noted in *Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433], 'The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized— does not suffice to create a cause of action for negligence.' *Budd* was an attorney malpractice case, but its rationale seems equally applicable to medical malpractice. Until the patient 'suffers appreciable harm' as a consequence of the alleged act of malpractice, he cannot establish a cause of action. ' "It follows that the statute of limitations does not begin to run against a negligence action until some damage has occurred." ' [Citations.]" (*Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 656, fn. 11 [135 Cal.Rptr. 75, 557 P.2d 507]; see also *Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d

---

[2] In addition to the time provided by section 340.5, under certain circumstances sections 356 and 364 provide additional time in which to commence an action against a health care provider. Section 356 provides: "When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." Section 364, subdivision (a), requires that before commencing a professional negligence action against a health care provider, a plaintiff must serve the prospective defendants with notice of his or her intention to bring an action. Section 364, subdivision (d), provides: "If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice." The additional time provided by sections 356 and 364 has been the subject of conflicting opinions in the Court of Appeal. (See *Estrella* v. *Brandt* (9th Cir. 1982) 682 F.2d 814, 816-820.) In this case we do not reach application of these provisions.

46, 54 [210 Cal.Rptr. 781, 694 P.2d 1153]; *Brown* v. *Bleiberg* (1982) 32 Cal.3d 426, 437, fn. 8 [186 Cal.Rptr. 228, 651 P.2d 815]; *Bispo* v. *Burton* (1978) 82 Cal.App.3d 824, 831 [147 Cal.Rptr. 442]; *Torres* v. *County of Los Angeles* (1989) 209 Cal.App.3d 325, 333 [257 Cal.Rptr. 211].)

The "appreciable harm" rule discussed in *Larcher* v. *Wanless* was more fully explained in *Bispo* v. *Burton, supra,* 82 Cal.App.3d at page 831. In *Bispo,* the defendant doctor performed hip surgery on the plaintiff; his last contact with the plaintiff was a postoperative visit on February 8, 1971. In May 1974 her left leg was found nonviable and was amputated. The plaintiff filed her complaint against the defendant on April 14, 1975. In rejecting the doctor's argument the complaint was untimely as a matter of law, the Court of Appeal stated: "Defendant takes the position that the date of injury has to be the last time that he was in a position to have caused the injury, to wit: the last treatment date. Plaintiff, on the other hand, takes the position that the 'ultimate result,' to wit: the amputation, is the date of injury. Both are wrong.

"Each case necessarily will turn on its own particular circumstance. It could well be that an injury or pathology will not manifest itself for some period after the last treatment by a physician. On the other hand, that injury or pathology may manifest itself and the patient will suffer known appreciable harm at a time prior to the 'ultimate' result. In the latter case, the . . . period will start to run at the point at which the 'appreciable harm' is first manifested." (*Bispo* v. *Burton, supra,* 82 Cal.App.3d at p. 831.)

In finding the record insufficient to support summary judgment, the court in *Bispo* stated: "Nothing in respondent's supporting declarations denies that the amputation of appellant's leg was, as she alleges, the injury she suffered, nor is there anything in the declarations which suggests that appellant suffered any other injury prior thereto caused by respondent, either manifest or of which there was evidence that appellant as a reasonably prudent person should have had notice. Respondent's statements viewed most advantageously are insufficient to effectively negate the existence of the triable issue of fact respecting the crucial element of injury and consequently cannot provide an adequate basis for summary judgment in respondent's favor." (*Bispo* v. *Burton, supra,* 82 Cal.App.3d at pp. 831-832.)

As in *Bispo,* nothing in the record here establishes the date of Mason's injury as a matter of law. Rather, the Hansens merely argue that in this case "the very nature of the wrongdoing, if any, is that the effect on a psychological profile of the client occurs at the time of the misfeasance or malfeasance." The Hansens offer no evidentiary support for this conclusion. Indeed, what evidence there is in the record suggests Mason's injury *did not*

occur at the time of the alleged sexual relations. As we have seen, in her declaration, Mason describes the onset of symptoms as occurring months after her relationship with Charles Hansen ended. Her description of delayed symptoms is consistent with the view of clinicians who have described the injury caused by patient-therapist sexual realtions as "post-traumatic stress." (See Morin, *Civil Remedies for Therapist-Patient Sexual Exploitation* (1988) 19 Golden Gate L.Rev. 401, 406, fn. 26 (Morin); *Simmons v. United States* (9th Cir. 1986) 805 F.2d 1363, 1367.)

Although there is no psychological evidence Mason suffered harm at the time of her sexual relationship, the Hansens nonetheless suggest we analogize her complaint to a claim of battery. We do not believe battery provides a very useful analogy. "Most patients are already in emotional or psychological distress when they seek therapy. They may not immediately perceive that their emotional health is deteriorating. Even if they are aware that they are feeling worse, they may not link the deterioration to the therapist, especially during the pendency of the sexual relationship. (Morin, *supra*, 19 Golden State L. Rev. at p. 424.)

Moreover, we note that in advancing their analogy, the Hansens rely upon *Sonbergh v. MacQuarrie* (1952) 112 Cal.App.2d 771, 774 [247 P.2d 133], where the plaintiff had been battered in 1948 but did not file a complaint until August 1951. The plaintiff in *Sonbergh* argued he did not discover the seriousness of his injuries until April 1951. Despite his late discovery of harm, the court applied the general rule that " '[W]here an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once." (112 Cal.App.2d at p. 774.)

Of significance here, the court in *Sonbergh* rejected the plaintiff's reliance on an exception to the general rule created for malpractice cases. "This exception to the general rule rests upon the theory that ignorance or concealment which is the result of defendant's conduct, rather than the negligence of plaintiff, tolls the running of the statute until discovery of the injury." (112 Cal.App.2d at p. 773.) Thus *Sonbergh* itself recognizes the important distinction between a nonconsensual battery and the hidden or unknown injuries a patient may experience as the result of professional negligence.

Mason's claims of course are for the Hansens' alleged malpractice. Although the malpractice exception described in *Sonbergh v. MacQuarrie* has been replaced by section 340.5, enactment of the statute in no sense requires renewed application of the strict general rule. *Larcher v. Wanless* and *Bispo* make it plain malpractice claims are to be governed by the "appreciable

harm" standard articulated in those opinions, rather than the strict general rule the Hansens propose.

In order to establish the date of Mason's injuries, the Hansens also rely on Mason's response to their form interrogatories. Form interrogatory 9.1 asked Mason "Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state: [¶](a) the nature; [¶](b) the date it occurred; [¶](c) the amount; [¶](d) the name, ADDRESS, and telephone number of each PERSON to whom an obligation was incurred."

In her initial response to interrogatory 9.1, Mason stated: "a. Mental and Emotional Distress, dissolution of my marriage, disruption of family life, nerviousness [*sic*], axienties [*sic*], sleeplessness, nausa [*sic*], headaches, family/marriatal [*sic*] stress, mistrustful towards men, and depression. [¶]b. September 1977 to present. [¶] c. Total amount unknown at this time, discovery on going."

In her opposition to the Hansens' motion for summary judgment, Mason explained that reference to September 1977 was a mistake: "With respect to my response to form interrogatory number 9.1 (a), I attribute my mental and emotional distress to the sexual contacts with DR. HANSEN. However, with respect to my response to form interrogatory 9.1 (b), my answer to the date it occurred is incorrect. The date of September 1977 merely refers to the date of the commencement of my therapy with defendants. The sexual contacts took place in 1983. I began to suffer mental and emotional distress symptoms from these contacts sometime in 1986-1987. I did not realize the wrongfulness of the sexual contacts or realize that they were the cause of my mental and emotional distress, i.e. that I had been injured and abused by DR. HANSEN, until in or about April of 1988."

As they did in the trial court, the Hansens argue that since Mason's initial response to the interrogatory indicates she suffered damage in 1977, even under *Bispo* her claim is time barred as a matter of law. Relying on *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22 [112 Cal.Rptr. 786, 520 P.2d 10], and *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382 [121 Cal.Rptr. 768], the Hansens contend no consideration should be given to Mason's explanation of her response. We do not believe we are free to ignore Mason's explanation.

The court in *Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 481-482 [261 Cal.Rptr. 735], confronted and rejected a similar argument. "Arguing that these admissions are decisive, Wells Fargo cites *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22, for the proposition that admissions are entitled to high credibility in motions for summary

judgment: 'As the law recognizes in other contexts (see Evid. Code, §§ 1220-1230) admissions against interest have a very high credibility value . . . . Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of *fact* (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits.' The holding of *D'Amico* appears entirely sound on its facts; and this court has recently applied the decision where credible admissions on deposition were contradicted only by self-serving declarations of a party. [Citations.] But *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 382, phrased the holding in broad language that should be accepted with caution: 'Accordingly, when a defendant can establish his defense with the plaintiff's admissions . . . the credibility of the admissions are valued so highly that the controverting affidavits may be disregarded as irrelevant, inadmissible or evasive.' [Citations.]

"Apparently accepting the language of *Leasman* at face value, Weil and Brown comment: 'Note that if the case went to trial, the judge or jury might choose to believe the contradictory testimony. But for summary judgment purposes, a party is *bound* by his or her admissions made in the course of discovery!' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (1988) [¶] 10:84.) As the commentators' exclamation point suggests, an uncritical application of the *D'Amico* decision can lead to anomalous results, inconsistent with the general principles of summary judgment law. We do not interpret the decision, however, as saying that admissions should be shielded from careful examination in light of the entire record. A summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions, which are contradicted by other credible evidence."

In this case Mason's explanation of her initial response to the interrogatory, viewed in light of the whole record, is credible. As we have seen, Mason claims she was injured by a sexual relationship which allegedly began in 1983. Plainly the injuries caused by those relations could not have occurred in 1977, as she indicated in her initial interrogatory response. Thus if a trier of fact believes the relations began in 1983, the trier of fact could reasonably conclude that the initial interrogatory response was, as Mason explained in her declaration, a simple mistake.

In sum then, the summary judgment must be reversed because there is no evidence which establishes the date of Mason's injury within the meaning of section 340.5.

Judgment reversed.

Wiener, Acting P. J., and Todd, J., concurred.

Respondents' petition for review by the Supreme Court was denied May 30, 1991.