Filed 4/11/25  Mondragon v. Let's Do Lunch CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RAFAEL MONDRAGON, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> LET'S DO LUNCH, INC., <br><br> Defendant and Respondent. | B329898 <br><br> (Los Angeles County Super. Ct. No. 20STCV13838) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maren E. Nelson, Judge.  Reversed.

Mahoney Law Group, Kevin Mahoney, Katherine Odenbreit, Raleigh Dixon; Ferguson Case Orr Paterson and John A. Hribar for Plaintiff and Appellant.

Seyfarth Shaw, Michele J. Beilke, Julia Y. Trankiem and Blake E. Guerrero for Defendant and Respondent.

\* \* \* \* \* \*

A former employee filed two separate cases against his former employer—one alleging wage and hour violations, and another alleging wrongful termination in violation of public policy. The trial court granted summary judgment in the wage and hour case based solely on the former employee's response to a contention interrogatory in the wrongful termination case. This was error, so we reverse the judgment.

### FACTS AND PROCEDURAL BACKGROUND

**I.     Facts**

Let's Do Lunch, Inc. (defendant) provides "perishable prepared food for schools' distributors, private-label, and retail customers in California and throughout the United States." Raphael Mondragon (Mondragon) was hired as a forklift operator at defendant's Los Angeles-based warehouse in November 2018. He was terminated less than six months later, in April 2019, for being verbally aggressive toward a co-worker.

While employed by defendant, Mondragon was required to "come earlier" for his shift than the designated "start time," but not permitted to clock in until "half an hour or one hour late." Mondragon's supervisors also directed him to "punch out" for the day, but to "come back" to finish the day's work. There were also times that he could not take rest or meal breaks due to the volume of work, but was ordered to clock out to document breaks he never took. As a result, Mondragon's paystubs did not include the extra hours he worked or premiums for missed breaks. He was also assigned to work "14 or 15 days" "nonstop" without

receiving extra pay.  Mondragon spent his own money to purchase thermal shirts, pants, protective gloves, and boots and incurred expenses to launder his work uniform separately because it was "too dirty" to wash with his personal clothes.

## II.     Procedural Background[1]

### A.     *Wage and hour action*

#### 1.     *Complaint*

In April 2020, Mondragon filed a wage and hour action against defendant.[2]  He asserted causes of action for (1) failure to

---

1       Defendant filed a request for judicial notice of nine exhibits consisting of pleadings and filings from the various trial court matters Mondragon filed; Mondragon opposed the request as to three of those exhibits on the ground that they are "irrelevant" and presented simply to "make Mondragon look bad."  The court hereby:

     (1)     denies defendant's request for judicial notice of Exhibits 1 through 6 because they contain pleadings and filings already in the record on appeal in the parties' appendices;

     (2)     denies defendant's request for judicial notice of Exhibit 8 (the trial court's order striking a peremptory challenge filed by Mondragon) because it is irrelevant to the issues on appeal (*Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569 (*Aquila*) [only relevant material may be judicially noticed]); and

     (3)     grants defendant's request for judicial notice of Exhibit 7 (the trial court's order finding certain of Mondragon's actions related) and Exhibit 9 (the trial court's order dismissing one of Mondragon's actions) because they are relevant to the litigation history here (*Aquila*, at p. 569; Evid. Code, §§ 452, subd. (d), 459, subd. (a)).

2       Mondragon initially filed the wage and hour action as a putative class action, but later dismissed the class allegations.

3

pay all wages (in violation of Labor Code sections 204, 206, 510, 1182.12, 1194, 1194.2, and 1197), (2) failure to accord meal periods (in violation of Labor Code sections 226.7 and 512), (3) failure to accord rest periods (in violation of Labor Code section 226.7), (4) failure to pay all wages at termination (in violation of Labor Code sections 201, 202, and 203), (5) failure to issue accurate itemized wage statements (in violation of Labor Code sections 226 and 1174), (6) failure to indemnify for work-related expenditures (in violation of Labor Code sections 2800 and 2802), and (7) a derivative violation of California's Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200) based on the underlying Labor Code claims.[3]

2.    *Discovery*

Defendant propounded form contention interrogatories that, among other things, asked Mondragon:

> "Do YOU OR ANYONE ACTING ON YOUR BEHALF contend that any PERSON involved in the INCIDENT violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the INCIDENT?  If so, identify the name, ADDRESS, and telephone number of each PERSON and the statute, ordinance or regulation that was violated."

---

[3]    In July 2020, Mondragon also filed a separate action asserting all the same Labor Code violations but under the Private Attorneys General Act (PAGA) (Lab. Code, § 2698 et seq.).  That PAGA action was stayed pending the outcome of the wage and hour action.

Mondragon served a verified response to the interrogatory in October 2020 that listed the various Labor Code provisions from his complaint as well as the UCL and sections of the California Code of Regulations.

### B.    *Wrongful termination action*

#### 1.    *Complaint*

In September 2020, Mondragon (represented by a different law firm) filed a wrongful termination action against defendant. Mondragon alleged that he made three categories of complaints to his supervisors:  (1) in March 2019, Mondragon "raised safety issues" about his coworkers "improperly stack[ing] pallets" in his loading area and "entering into the path of his forklift"; (2) in April 2019, Mondragon complained about his hours being reduced and not receiving reporting-time pay for his short shifts; and (3) in April 2019, Mondragon demanded pay for time spent at an HR office reporting the issues with his reduced hours.  Mondragon alleged that he was terminated, shortly thereafter and in a "retaliatory fashion," for complaining about defendant's "safety practices" and about his "missing compensation."

Based on these allegations, Mondragon asserted causes of action for (1) violation of the UCL, and (2) wrongful termination in violation of public policy.[4]

#### 2.    *Discovery*

Defendant propounded the same form contention interrogatory it had propounded in the wage and hour action,

---

[4]      Mondragon's counsel in the wage and hour action also filed a retaliation action in February 2022, based on the same allegation that Mondragon was terminated for complaining about "unsafe forklift operating practices."  Mondragon dismissed that retaliation action a few months later.

5

asking Mondragon if he "contend[s] that any PERSON involved in the INCIDENT violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the INCIDENT?" Defendant inserted its own definition of "incident" that was keyed to the allegations in the wrongful termination action—specifically, "incident" was defined by defendant to mean: "The allegations in the operative complaint, including but not limited to, unfair business practices, wrongful termination, and [Mondragon's] complaints about missing compensation and [d]efendant's safety practices."

Mondragon served a verified answer to the contention interrogatory in October 2021 that made several objections and then answered, "No."

### 3. *Summary judgment and sanctions*

Defendant moved for summary judgment of Mondragon's wrongful termination action on the ground that Mondragon's response to the contention interrogatory that defendant did not violate any laws (as well as other interrogatory responses) foreclosed his wrongful termination claims. Mondragon did not oppose the motion, and the trial court granted it.[5]

---

[5] The court then awarded defendant $123,299 in attorney fees as sanctions against Mondragon for his "bad faith" maintenance of the wrongful termination action "without evidentiary support or factual basis." Mondragon and his counsel in the wrongful termination action appealed that sanctions order, and today we have issued a separate opinion in that matter. However, because our review of a summary judgment ruling is restricted to the evidence submitted in connection with the summary judgment motion (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 163), the record in that separate sanctions appeal has no bearing on our resolution of this appeal.

6

**C.** *Summary judgment in wage and hour action*

Defendant then moved for summary judgment of the wage and hour action on the ground that Mondragon's interrogatory response in the wrongful termination action admitting "there has been no statutory violation by [d]efendant" was also "fatal" to his wage and hour claims and established that those claims "lack[] merit."  Mondragon opposed the motion.  In his opposition, Mondragon (1) objected to the admissibility of his interrogatory response from the wrongful termination action; and (2) argued that, even if admissible, that response was not dispositive because (a) his response to the nearly identical form interrogatory in the wage and hour action identified a plethora of underlying statutory violations, and (b) his deposition testimony and corresponding time sheets and wage statements provided factual substantiation of his wage and hour claims.  Following further briefing and a hearing, the trial court issued a 15-page ruling granting defendant's motion for summary judgment.

The court reasoned that (1) Mondragon's response to the contention interrogatory in his wrongful termination action constitutes an "evidentiary admission of a party" and therefore is admissible in the wage and hour action's summary judgment proceeding; (2) Mondragon is "bound" by that "unequivocal[]" evidentiary admission that defendant did not commit any statutory violations; and (3) Mondragon did not carry his burden to show a triable issue as to any violations because his "contrary evidence is simply not credible" under *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*).

**D.** *Appeal*

Following the entry of judgment for defendant, Mondragon timely filed this appeal.

## DISCUSSION

Mondragon argues that the trial court erred in granting summary judgment for defendant in the wage and hour action based on his response to the contention interrogatory from the wrongful termination case.

We independently review a summary judgment ruling. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500 (*Patterson*).) While there is a split of authority over whether we review a trial court's subsidiary evidentiary rulings, including subsidiary rulings under *D'Amico*, *supra*, 11 Cal.3d 1, de novo or for abuse of discretion, we will sidestep that split by utilizing the standard of review most favorable to Mondragon—that is, de novo review. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [declining to decide governing standard for review of evidentiary objections in summary judgment proceedings]; *Harris v. Thomas Dee Engineering Co., Inc.* (2021) 68 Cal.App.5th 594, 604 [reviewing *D'Amico* ruling de novo]; *Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657, 659 (*Mackey*) [reviewing *D'Amico* ruling for abuse of discretion].)

## I.  Pertinent Law Governing Motions for Summary Judgment

### A.  *Burdens of proof*

Summary judgment is appropriate only where "all the papers submitted" show that "'no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.'" (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)

In adjudicating a motion for summary judgment, the moving party (usually the defendant) has the initial burden of showing that the plaintiff "has not established, and reasonably

8

cannot be expected to establish, one or more elements of the cause of action in question." (*Patterson, supra,* 60 Cal.4th at p. 500; Code Civ. Proc., § 437c, subds. (a), (c), (o)(1), (p)(2).) If the defendant does not carry that initial burden, the motion must be denied. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064.) If carried, however, the "burden [then] shifts" to the plaintiff to come forward with "substantial responsive evidence" ""showing that a triable issue of material fact exists as to that cause of action."" (Code Civ. Proc., § 437c, subd. (p)(2); *Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 862; *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

On appeal, we identify the issues framed by the plaintiff's operative pleading, determine whether the defendant carried its initial burden as to those issues, and if so, assess whether the plaintiff produced substantial evidence of any triable issues of material fact. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252-1253; *Heritage Marketing & Ins. Services, Inc. v. Chrustawka* (2008) 160 Cal.App.4th 754, 764 ["[t]he pleadings frame the issues on a motion for summary adjudication"].)

**B.** *Using discovery responses*

A summary judgment motion may be supported by "answers to interrogatories" as well as other modes of discovery like "admissions" and "depositions." (Code Civ. Proc., § 437c, subd. (b)(1); cf. *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587 [summary judgment can also be supported "through factually devoid discovery responses"].)

Not all types of discovery have the same preclusive effect.

9

If a response to a request for admission is unambiguous, the matter admitted in that response is deemed to be "a conclusive concession of the truth of [the] matter," effectively functioning as a *judicial admission* that cannot be contradicted with other evidence. (*Troche v. Daley* (1990) 217 Cal.App.3d 403, 409; Code Civ. Proc., § 2033.410, subd. (a); *Inzunza v. Naranjo* (2023) 94 Cal.App.5th 736, 742; *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 455-456 (*Minish*); *Monroy v. City of Los Angeles* (2008) 164 Cal.App.4th 248, 260; *Fredericks v. Kontos Industries, Inc.* (1987) 189 Cal.App.3d 272, 276-277.)

A response to an interrogatory or deposition testimony constitutes an *evidentiary admission* in any action. (Evid. Code, § 1220; *Murillo v. Superior Court* (2006) 143 Cal.App.4th 730, 736.) Unlike a judicial admission, an evidentiary admission is not preclusive because it "may be rebutted with explanatory evidence from the party against whom the [evidence] is offered." (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1425, fn. 21 (*Mt. Hawley*); see also *Phillips v. Cooper Laboratories* (1989) 215 Cal.App.3d 1648, 1661 ["a party may present evidence [at trial] at variance to prior answers to interrogatories"].) In other words, "[f]or summary judgment purposes," interrogatory responses and deposition testimony are "simply evidence" that "are considered and weighed in conjunction with other evidence" rather than treated as "incontrovertible judicial admissions." (*Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522 (*Scalf*); *Minish*, *supra*, 214 Cal.App.4th at pp. 457-458.)

### C. *The* D'Amico *Rule*

In *D'Amico v. Board of Medical Examiners*, *supra*, 11 Cal.3d 1, our Supreme Court held that a party who makes a "clear and unequivocal" discovery response cannot meet his

burden of showing a triable issue of material fact (and thereby defeat summary judgment) by crafting a "self-serving" declaration that contradicts that prior response. (*Id.* at pp. 21-22; *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 (*Price*), overruled on other grounds in *Riverisland Cold Storage, Inc. v. Fresno-Madera Production Credit Assn.* (2013) 55 Cal.4th 1169; *Minish*, *supra*, 214 Cal.App.4th at pp. 459-460; see also *Shin v. Ahn* (2007) 42 Cal.4th 482, 500, fn. 12 ["a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses"].) *D'Amico* rests on the notion that an earlier discovery response that was prepared "in the context of an established pretrial procedure whose purpose is to elicit facts" is of such "a very high credibility value" that a party's subsequent declaration contesting the earlier response fails to constitute substantial evidence necessary to defeat summary judgment. (*D'Amico*, at p. 22; *Niederer v. Ferreira* (1987) 189 Cal.App.3d 1485, 1503; *Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1451.)

The *D'Amico* rule has three implicit limitations or exceptions. First, the *D'Amico* rule does not apply in the first place if the party's discovery response is "equivocal" or "ambiguous." (*Price*, *supra*, 213 Cal.App.3d at p. 482; *Minish*, *supra*, 214 Cal.App.4th at p. 460.) Second, the *D'Amico* rule will not treat a prior discovery response as controlling if the party "credibly explains" the discrepancy between his prior discovery response and his declaration. (*Ahn v. Kumho Tire U.S.A., Inc.* (2014) 223 Cal.App.4th 133, 144-145 (*Ahn*); *Scalf*, *supra*, 128 Cal.App.4th at pp. 1524-1525; *Mason v. Marriage & Family Center* (1991) 228 Cal.App.3d 537, 545-546.) Third, the *D'Amico* rule does not deem a prior discovery response as controlling if

11

there is other "credible evidence" in the record "demonstrat[ing]" that there are "genuine issues of factual dispute." (*Scalf*, at pp. 1524-1525; *Ahn*, at p. 147.) These exceptions strike a balance between penalizing gameplaying by a party who conveniently contradicts himself to avoid summary judgment (*Scalf*, at pp. 1522) and keeping the door to trial open for cases where there are genuine factual disputes (*id.* at p. 1525; *Price*, at p. 482).

## II. Analysis

The trial court here erred in granting defendant's summary judgment motion because (1) defendant failed to satisfy its initial burden by relying on Mondragon's interrogatory response from the wrongful termination case, and (2) even if the burden shifted to Mondragon, the *D'Amico* rule does not apply to bar consideration of other evidence establishing material disputes of fact on Mondragon's wage and hour claims.

### A. *Defendant's initial burden*

As a threshold matter, and contrary to what Mondragon argues, Mondragon's contention interrogatory response from the wrongful termination action was admissible in the wage and hour action. It constitutes an adverse party admission (Evid. Code, § 1220), and because that admission narrowed the scope of Mondragon's pleadings in the wage and hour action, Mondragon's admission falls comfortably within the general rule that pleadings in one case are admissible as evidentiary admissions in other cases. (*Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1061; *Mt. Hawley*, *supra*, 215 Cal.App.4th at p. 1425, fn. 21; *Minish*, *supra*, 214 Cal.App.4th at p. 457; *Meyer v. State Board of Equalization* (1954) 42 Cal.2d 376, 385.) Mondragon resists this conclusion, pointing to the language in Code of Civil Procedure section 2030.410 that the party

propounding an interrogatory "may use" the response at "the trial or any other hearing *in the action*." (Code Civ. Proc., § 2030.410, italics added.) But that statute's affirmation that an interrogatory response may be used in the case in which it is elicited does not on its face preclude its use in other cases. Our Legislature has explicitly precluded use of responses to requests for admissions in other cases (Code Civ. Proc. § 2033.410, subd. (b) [response to request for admission "is made for the purpose of the pending action only" and "shall not be used in any manner against that party in any other proceeding"]); we must give effect to our Legislature's failure to impose a similar restriction with respect to interrogatory responses. (See *People v. Trevino* (2001) 26 Cal.4th 237, 242 [our Legislature's use of "materially different language" in provisions "addressing the same subject or related subjects" is indicative of a different meaning].)

Despite the general rule that an interrogatory response is admissible, Mondragon's specific response to the contention interrogatory in the wrongful termination action did not satisfy defendant's initial burden on summary judgment because that response is irrelevant to the claims at issue in the wage and hour action. As noted above, Mondragon's response that "no" statute, ordinance, or regulation was violated during "the incident" was necessarily limited to "the *incident*," which the contention interrogatory defined as "[t]he allegations in the operative complaint" in the wrongful termination action. However, and as noted above, the conduct underlying the wrongful termination and UCL claims in that operative complaint deal chiefly with Mondragon's termination after reporting safety issues, the reduction of his work hours, and failure to pay for his time spent at the HR office. Although one sentence in the operative

13

complaint alleges that "[d]efendant[] continued with [its] pattern and practice of cutting costs, at the expense of [Mondragon], and its employees by failing to provide [Mondragon] and other employees meal and rest periods in compliance with the law," that sentence is part of a paragraph that more broadly alleges that defendant committed an unfair business practice by adopting an amalgam of cost-cutting measures, including (1) purported failures to hire "sufficient employees to fill in for a permanent employee who is out on medical leave, or to assist an employee with medical work restrictions," and (2) the above noted cost-cutting measure of not providing meal and rest periods. This stray allegation is nowhere tied to the factual allegations in that operative complaint. (See *John's Grill, Inc. v. The Hartford Financial Services Group, Inc.* (2024) 16 Cal.5th 1003, 1008 [a complaint should be read "'as a whole and all its parts in their context'"].) Critically, the operative complaint in the wrongful termination action nowhere alleges the failure to provide meal and rest periods as independent Labor Code violations, nowhere alleges a failure to pay all wages, a failure to pay all wages at termination, a failure to issue accurate itemized wage statements, or a failure to indemnify for work-related expenditures. As a result, Mondragon's response to the contention interrogatory is not relevant to establish that he admitted no pertinent violation of law as to the Labor Code violations at issue in the wage and hour action.

Defendant responds that Mondragon acknowledged an overlap between the wrongful termination action and the wage and hour action when he filed a notice of related cases. We disagree. While Mondragon checked a box on the notice stating the cases "involve[] the same parties and [are] based on the same

14

or similar claims," the language of the operative complaints shows that the similarity of those claims stops with the fact that they arose out of Mondragon's employment; the language of the operative complaints refutes that they arose from the same facts or entail the same alleged violations of the law. What is more, there is nothing in the record indicating the trial court ever deemed those actions related (as it did with two of Mondragon's other actions). (See Cal. Rules of Court, rule 3.300.)

### B. *Mondragon's responsive burden*

Even if we assume that Mondragon's response to the contention interrogatory in the wrongful termination action was sufficiently relevant to sustain defendant's initial burden, Mondragon met his responsive burden of raising a triable issue of material fact by pointing, at a minimum, to his contention interrogatory response *in the wage and hour action* enumerating the pertinent violations of law.

The trial court discounted this contrary evidence solely on the basis of the *D'Amico* rule. This was incorrect for two reasons.

First, the contrary evidence the trial court disregarded in this case was not created to generate a triable issue by contradicting an earlier discovery response. Here, Mondragon responded to a contention interrogatory *in this case* by listing various Labor Code violations in October 2020 and provided his deposition testimony substantiating those violations in November 2022. Mondragon's response to the contention interrogatory in the wrongful termination action occurred in between these two discovery events, in October 2021. This sequence of events bears little to no resemblance to the events giving rise to the *D'Amico* rule, which, as noted above, involve a party submitting a declaration in opposition to summary judgment that contradicts

an otherwise fatal discovery response.  Given these dissimilarities, it is unclear that the *D'Amico* rule applies *at all*. (Accord, *Scalf*, *supra*, 128 Cal.App.4th at p. 1522 ["In a nutshell, the rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony"].)

Second, the *D'Amico* rule applies only when the party's earlier discovery response is "clear and unequivocal."  To be sure, and as defendant argues and as Mondragon's set of attorneys admitted in the wrongful termination action, Mondragon's "No" response to the contention interrogatory in the wrongful termination action was "clear and unequivocal" as to whether any legal violations underlie the claims *in that action*.  But, as discussed above, that response is far from clear as to whether it constitutes an admission to the absence of the Labor Code violations underlying the claims *in this action*.

Defendant resists this conclusion by asserting that Mondragon never tried to explain to the trial court the discrepancy between his interrogatory response in the wrongful termination action and the evidence he adduced in support of his claim in this case.  Defendant further asserts that Mondragon cannot explain that discrepancy now because he forfeited any explanation in the trial court.  While Mondragon did not provide an explanation of a discrepancy, Mondragon effectively explained that there was no discrepancy to explain away when, in opposition to summary judgment, he asserted that the interrogatory response from the wrongful termination action has "no bearing or evidentiary value" in the wage and hour action, which is "a different case with different causes of action."

**DISPOSITION**

The judgment is reversed. Mondragon is entitled to his costs on appeal, and we deny defendant's request for attorney fees incurred on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR

17