[No. B027019. Second Dist., Div. One. Apr. 3, 1989.]

OCTAVIO TORRES, a Minor, etc., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**COUNSEL**

Manuel Hidalgo and Gilbert D. Sigala for Plaintiff and Appellant.

Goldman & Von Bolschwing, Bonne, Jones, Bridges, Mueller, O'Keefe & Hunt, Greines, Martin, Stein & Richland, Martin Stein, Timothy T. Coates, Lewis, D'Amato, Brisbois & Bisgaard and R. Gaylord Smith for Defendants and Respondents.

OPINION

HANSON, Acting P. J.—

INTRODUCTION

Plaintiff Octavio Torres, a minor, by and through his mother and guardian ad litem, Graciela Torres, appeals the trial court's grant of summary judgment to defendants County of Los Angeles, Juan Arce, M.D., William Fields, M.D., Addie Davis, L.V.N., Patricia Barrett, R.N., Frances Riley, R.N., Wesley Prater, M.D., James Tucker, M.D., Louis Peterson, M.D., and Bennie Brown, M.D., on plaintiff's cause of action for damages for medical malpractice filed October 18, 1982.

STANDARD OF REVIEW

After examining the facts before the trial judge on a summary judgment motion, an appellate court independently determines their effect as a matter of law. (*Bonus-Built, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

Despite this independent review, the appellate court applies the same legal standard as did the trial court. California Code of Civil Procedure section 437c, subdivision (c) requires the trial court to grant summary judgment if no triable issue exists as to a material fact, and if the papers entitle the moving party to a judgment as a matter of law. Emphasizing triable issues rather than disputed facts, summary judgment law turns on issue finding rather than issue determination. (*Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 441-442 [116 P.2d 62].)

The appellate court must examine only papers before the trial court when it considered the motion, and not documents filed later. (*Wiler* v. *Firestone Tire & Rubber Co.* (1979) 95 Cal.App.3d 621, 627 [157 Cal.Rptr. 248].) Moreover, we construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

The trial court's stated reasons supporting its ruling, however, do not bind this court. We review the ruling, not its rationale. (*Barnett* v. *Delta Lines, Inc.* (1982) 137 Cal.App.3d 674, 682 [187 Cal.Rptr. 219].)

FACTS

In January 1977, Graciela Torres, about six months pregnant with the subsequently born plaintiff, Octavio Torres, consulted M. J. Pilson, M.D.,

at South Hoover Hospital about her pregnancy. On March 15, 1977, Graciela was transferred to Martin Luther King, Jr., Hospital, owned and operated by defendant County of Los Angeles, where, on that day, Octavio was born. The complaint alleged that defendants, health care providers, negligently provided medical care to Graciela and Octavio during and after Octavio's birth, which caused him to suffer severe brain damage and to become permanently disabled.

Graciela testified in deposition that upon feeling something had gone wrong at the hospital, she first contacted an attorney, Mr. Alschuler, in June 1977. During 1977, in Alschuler's office, she signed a document authorizing the law firm to obtain her and Octavio's hospital records. On December 28, 1977, Alschuler filed a complaint for medical malpractice against Pilson, Hoover Hospital, and unnamed defendants. That complaint did not name Martin Luther King, Jr., Hospital, Los Angeles County, or any of its employees.

Graciela visited Nathaniel J. Friedman, an attorney, in 1979, told him what had happened at South Hoover and at Martin Luther King, Jr., Hospitals, and said she believed Alschuler was taking too long getting the case into court. Friedman told her she could take the case away from Alschuler if she wanted to do so. Graciela told Friedman she would take her case away from Alschuler to Friedman. Graciela was unable to take the case from Alschuler at that time, however, so Friedman told Graciela through a friend that she should call him back after he finished two other cases.

In April 1980, Octavio's parents retained Nathaniel J. Friedman to represent plaintiff. Friedman filed a first amended complaint for damages on May 15, 1980. Although adding numerous defendants, it did not name the County of Los Angeles or its employees as defendants. Friedman was plaintiff's attorney for only some three months, however, because he wrote Mr. and Mrs. Torres a letter saying he could not handle the case because Octavio was not born at South Hoover Hospital. He gave Mrs. Torres a paper to sign so he would not be her attorney any longer, and she signed it. (Torres later sued Friedman for legal malpractice; *Torres* v. *Friedman* (1985) 169 Cal.App.3d 880 [215 Cal.Rptr. 604] held that an attorney representing a minor through a guardian ad litem may not withdraw as counsel of record without prior court approval.)

On October 10, 1980, Octavio's parents retained Barbara Silva-Vidor, an attorney, to represent him on malpractice causes of action against Dr. Pilson and South Hoover Hospital. In a judgment filed November 13, 1980, Judge Robert Weil granted summary judgment against plaintiff and in favor of those defendants. Octavio's parents then filed a legal malpractice action

against their earlier attorneys. Because they could not afford to pay Silva-Vidor, however, Mr. and Mrs. Torres took the file from her and in 1981 contacted Manuel Hidalgo, who has represented plaintiffs as their attorney since that time.

Plaintiff's complaint for medical malpractice against the defendants in the case at bench alleged that plaintiff learned defendants' negligence was a causal factor in the harm plaintiff suffered for the first time on May 17, 1982. Only at that time did an analysis of hospital records disclose this fact, and before May 17, 1982, neither plaintiff nor plaintiff's parents had any suspicion that the defendant hospital or its employees were negligent in treating Graciela and Octavio Torres.

On June 21, 1982, plaintiff filed a complaint for damages for legal malpractice against Norman Alschuler, Nathaniel J. Friedman, and Barbara Silva-Vidor. The allegations against these attorneys included their failure to designate Martin Luther King, Jr., Hospital as a defendant, failure to ascertain the identity of defendants, and failure to prosecute plaintiff's case.

On June 23, 1982, Hidalgo filed a claim on behalf of plaintiff with the County of Los Angeles. The claim alleged negligence of Martin Luther King, Jr., Hospital and its employee health care providers was a causal factor in plaintiff's injuries. The County of Los Angeles denied the claim on July 29, 1982. Plaintiff's attorney filed a petition for relief from late filing on August 23, 1982. The county denied that petition on October 15, 1982. On April 13, 1983, the plaintiff filed a petition for order relieving petitioner from the provisions of Government Code section 945.4. The trial court denied the petition on May 31, 1983.

On October 18, 1982, plaintiff Octavio Torres, through his guardian ad litem Graciela Torres, filed the complaint for damages for medical malpractice on which this appeal is based. The complaint alleged in paragraph 25 that plaintiff's claim was filed on June 23, 1982, within the 100-day period from the date of the accrual of the cause of action.

On February 25, 1987, defendants filed a summary judgment motion. It asserted that the California Tort Claims Act barred plaintiff's suit because plaintiff failed to file a claim within 100 days after the cause of action accrued, as required by Government Code section 911.2, and because she did not subsequently obtain judicial relief from that requirement.

Plaintiff's response, filed March 16, 1987, asserted that under Code of Civil Procedure section 340.5, *Young* v. *Haines* (1986) 41 Cal.3d 883 [226 Cal.Rptr. 547, 718 P.2d 909], and other law, plaintiff's cause of action accrued on March 15, 1982, that the only other possible accrual date would be May 17, 1982, and that defendants' intentional concealment tolled

plaintiff's cause of action. After defendants filed their reply on March 23, 1987, Judge Fred Woods granted defendants' motion on March 30, 1987.

Plaintiff filed a notice of appeal on April 15, 1987. The order for entry of summary judgment was filed on May 12, 1987. (Pursuant to Cal. Rules of Court, rule 2(c), we deem plaintiff's notice of appeal filed prior to entry of the judgment to be valid and to have been filed immediately after entry.)

## ISSUES

On appeal plaintiff claims that the trial court erroneously ruled that as a matter of law no triable issue of fact existed as to the accrual of the underlying cause of action and abused its discretion by determining that the cause of action accrued more than one year before the time a claim was presented.

Plaintiff argues that Code of Civil Procedure section 340.5 sets forth an eight-year limitation period with respect to minors, which is not subject to the one-year discovery limitation applicable to adults, and that pursuant to Government Code section 901, the Code of Civil Procedure section 340.5 controls in any case where there is a claim requirement pursuant to the California Tort Claims Act.

## DISCUSSION

Plaintiff on appeal argues that Code of Civil Procedure section 340.5, as interpreted by *Young* v. *Haines, supra,* 41 Cal.3d 883, and *Steketee* v. *Lintz, Williams and Rothberg* (1985) 38 Cal.3d 46 [210 Cal.Rptr. 781, 694 P.2d 1153], allows a minor under the age of six to file a negligence action against a health care provider within three years or before the minor's eighth birthday, whichever provides a longer period.

■ The question in the case at bench, however, does not involve the statute of limitations issue adjudicated in *Young* and *Steketee.* Instead, it raises the distinction between *accrual* (the earliest a cause of action may be brought), and a statutory *limitation* (the point after which it may no longer be brought). In a minor's medical malpractice action against a government defendant, when does the cause of action *accrue* for purposes of the Government Code section 911.2 requirement?

Before January 1, 1988, section 911.2 stated that "[a] claim relating to a cause of action for death or for injury to person . . . shall be presented . . . not later than the 100th day after the accrual of the cause of action."

Section 901 states that in computing the time limits prescribed by section 911.2, "the date of the accrual of a cause of action to which a claim relates is the date upon which the cause of action would be deemed to have accrued

within the meaning of the statute of limitations which would be applicable thereto if there were no requirement that a claim be presented to and be acted upon by the public entity before an action could be commenced thereon."

The prescribed statutes of limitations for commencement of actions against governmental entities are mandatory and must be strictly complied with. (*Anson* v. *County of Merced* (1988) 202 Cal.App.3d 1195, 1200 [249 Cal.Rptr. 457], citing *Smith* v. *City and County of San Francisco* (1977) 68 Cal.App.3d 227, 230 [137 Cal.Rptr. 146].) Code of Civil Procedure section 340.5, the limitations statute applicable to this cause of action, does not relieve a litigant of complying with the time limits and requirements imposed by the Government Tort Claims Act. (*Anson* v. *County of Merced, supra,* 1195, 1202.)

*Young* v. *Haines, supra,* 41 Cal.3d 883, 894-896, overruled *Kite* v. *Campbell* (1983) 142 Cal.App.3d 793 [191 Cal.Rptr. 363], which had read the "delayed discovery" rule into the provision for minors in section 340.5.[1] Like *Young, Kite,* and *Steketee,* we note that section 340.5 distinguishes "between the 'injury' starting date of the general provisions [i.e., the first two sentences] and the 'wrongful act' starting date of the minor provisions [i.e., the third sentence]." (*Young* v. *Haines, supra,* 41 Cal.3d 883, 897.)

"Wrongful act" is not synonymous with "injury"; the latter may occur long after the former, and injury refers to the damaging effect of a wrongful act and not to the act itself. (*Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 656 [135 Cal.Rptr. 75, 557 P.2d 507].) Section 340.5 states that a minor's action for injury against a health care provider accrues "within three years from the date of the alleged *wrongful act. . . .*" (Italics added.) Hence although the statutory limitations period under section 340.5 is more generous to minors, the statutory *accrual* date, when the wrongful act precedes the injury, may in some circumstances be more strict than the accrual date

---

[1] Code of Civil Procedure section 340.5 states in part: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period. Such time limitation shall be tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor for professional negligence."

accorded to adults (whose accrual date commences from the injury, and remains subject to a statutory delayed discovery provision).

Although they postponed the issue to another day, *Steketee* and *Young* recognized the potential constitutional difficulty posed by the different statutory treatment accorded to minors and adults. (*Steketee* v. *Lintz, Williams & Rothberg, supra,* 38 Cal.3d 46, 54, fn. 4; *Young* v. *Haines, supra,* 41 Cal.3d 883, 897, fn. 10.) ■ We perceive no rational basis for placing persons into different classes on the basis of criteria wholly unrelated to the statutory objective. Such a classification " ' "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' " (*Young* v. *Haines, supra,* 41 Cal.3d 883, 899, quoting *Reed* v. *Reed* (1971) 404 U.S. 71, 75-76 [30 L.Ed.2d 225, 229-230, 92 S.Ct. 251].)

■ The Legislature, perceiving a relationship between the malpractice insurance crisis and the former statute of limitations, amended Code of Civil Procedure section 340.5 "to give insurers greater certainty about their liability for any given period of coverage, so that premiums could be set to cover costs." However, "it is difficult to see how discrimination against minor malpractice plaintiffs vis-à-vis adults is rationally related to this or any other ascertainable legislative goal. The fact that such discrimination against minors would bar some meritorious claims and thereby reduce total malpractice liability is not enough to justify it. If claims are reduced in an arbitrary manner, the classification scheme denies equal protection of the law." (*Young* v. *Haines, supra,* 41 Cal.3d 883, 900-901.)

By defining the actions of adults and minors to accrue differently, section 340.5 violates the minors' right to the law's equal protection. The adults' cause of action may accrue either from the "date of injury" or from the time "the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury," whichever occurs earlier. The minors' cause of action, by contrast, accrues from the date of the "wrongful act" rather than the injury, and the statute contains no comparable provision permitting accrual when the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury.

■ Dating the accrual of the minor's medical malpractice action from the "wrongful act" penalizes minors insofar as Government Code section 901 computes section 911.2 time limits from the Code of Civil Procedure section 340.5 accrual. When harm occurs prenatally or in childbirth, the "wrongful act" may only be revealed to have caused an "injury" to the minor months or even years later, as the child grows and develops.

With regard to when the Government Code section 911.2 time period begins, we hold that for purposes of the claims statutes, a minor's medical malpractice cause of action against a government defendant accrues when the minor's parent or guardian knew or should have known through the exercise of reasonable diligence that a negligent wrongful act of medical care caused the child's injuries. This holding is consistent with the California Supreme Court's opinion in *Hernandez* v. *County of Los Angeles* (1986) 42 Cal.3d 1020, 1023-1024 [232 Cal.Rptr. 519, 728 P.2d 1154], decided after *Haines*. In oral argument, plaintiff's counsel asserted that only the parent's actual knowledge of all the elements of medical malpractice causes the action to accrue. The defendant County of Los Angeles answered that accrual is governed by a "know or should have known" standard. The law supports the latter view, and holds that the parents knowledge or lack of knowledge determines when a minor's cause of action accrues. (*Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 885 [112 Cal.Rptr. 540, 519 P.2d 588].)

We must therefore evaluate whether plaintiff satisfied the Government Code section 911.2 claim filing requirement given this rule. Octavio's medical malpractice cause of action accrued when his mother discovered, or through the exercise of reasonable diligence should have discovered, his injury and its negligent cause. The plaintiff must present a written claim to a public entity within 100 days after the cause of action accrues. Only after the public entity rejects the claim can the plaintiff sue. In the case at bench, Octavio's claim was presented on June 23, 1982. Thus his cause of action must not have accrued earlier than March 15, 1982. Given the standard of reviewing a grant of summary judgment, we must determine whether a triable issue of fact exists concerning whether Octavio's parents knew or through the exercise of reasonable diligence should have known of Octavio's injury and its negligent cause before March 15, 1982. (*Hernandez* v. *County of Los Angeles, supra,* 42 Cal.3d at pp. 1023-1024.)

Mrs. Torres testified that she visited the office of her lawyer, Mr. Alschuler, in 1977 and signed documents to obtain records from Martin Luther King, Jr., Hospital. Mrs. Torres testified in her April 28, 1983, deposition that after the baby was born she and her husband felt something had gone wrong at one of the hospitals. They discussed it approximately a month after Mrs. Torres came out of the hospital. Mrs. Torres testified that at that time she was concerned about being sterile because they had taken out her womb as a consequence of "the bad care of the birth," and was also concerned about the baby's condition. After talking with her husband, she decided to contact an attorney two or three months later, describe the problem, and see what the attorney could do or what he would say.

When Mrs. Torres met with Alschuler, she signed papers and understood that Alschuler was going to investigate to see if she had a claim, although

Alschuler did not say whether she had a claim against both South Hoover Hospital and Martin Luther King, Jr., Hospital, or only against one. In her January 28, 1983, deposition, Mrs. Torres testified that she was told that the purpose of obtaining Martin Luther King, Jr., Hospital records was "to investigate, to find out what had happened to my son, what had happened to me." Alschuler filed a medical malpractice suit against Dr. Pilson and Hoover Hospital on December 28, 1977. The complaint did not name defendants in the case at bench.

In her January 20, 1983, deposition, Mrs. Torres also testified that she noticed Octavio was not like her other children. Although she did not tell her husband or anyone else how she felt, she took Octavio to Children's Hospital when he was seven or eight months old. There the doctor told her Octavio was not developing normally, and that the doctor wanted to keep on seeing and treating Octavio. During the doctor's examination, Octavio could not sit, roll face down, keep his head straight, or grasp objects the doctor gave him. When Mrs. Torres returned to Children's Hospital a month later, Octavio still could not pass these tests. The doctor told her Octavio had problems and was not developing properly.

Mrs. Torres, in her January 28, 1983, deposition, testified that she saw a newspaper advertisement and called a Mrs. Salcido. She told Salcido about her son's condition. She then went with Salcido to see another lawyer, Mr. Friedman, in 1979. When she talked to Friedman, she "explained the problem. He asked me about my son, about the attention I received at Hoover Hospital." She told him the baby was not born at South Hoover Hospital, but was born at Martin Luther King, Jr., Hospital. Friedman told her it seemed to be a very good case, and a big case. Friedman filed a complaint in April 1980, and a first amended complaint on May 15, 1980, neither of which named defendants in the case at bench. Mrs. Torres testified on April 28, 1983, that at their last meeting in 1980 or 1981, Friedman had asked her whether he should sue the county hospital. Torres answered that she did not know, and told him only he knew whether it should be one hospital or both. (*Torres v. Friedman, supra,* 169 Cal.App.3d 880, 884, reveals that after filing the first amended complaint, Friedman obtained medical records disclosing that Octavio was born at Martin Luther King, Jr., Hospital. Friedman executed a substitution of attorney substituting Mr. and Mrs. Torres in propria persona on July 16, 1980. *Torres v. Friedman* later held that substitution of attorney to have been ineffective.)

In October 1980, Mrs. Torres retained a third attorney, Silva-Vidor, to represent them in a medical malpractice action, but summary judgment against plaintiffs followed on November 13, 1980, in favor of Pilson and South Hoover Hospital.

These events occurred before March 15, 1982. Plaintiff's testimony and her repeated visits to attorneys reflect at least presumptive notice and knowledge of medical malpractice. Her testimony reveals she actually believed herself and plaintiff to have been the victims of malpractice. (*Sanchez* v. *South Hoover Hospital* (1976) 18 Cal.3d 93, 101-102 [132 Cal.Rptr. 657, 553 P.2d 1129].) Because her attorneys at various moments told her she had no claim or otherwise gave her bad or incorrect advice does not postpone commencement of the limitations period. (*Gutierrez* v. *Mofid* (1985) 39 Cal.3d 892, 898-900 [218 Cal.Rptr. 313, 705 P.2d 886]; *Reyes* v. *County of Los Angeles* (1988) 197 Cal.App.3d 584, 591-592 [243 Cal.Rptr. 35].)

▪ Submission of a timely claim to a public agency is a condition precedent to a tort action. Failure to present the claim bars the action. (*Lutz* v. *Tri-City Hospital* (1986) 179 Cal.App.3d 807, 812 [224 Cal.Rptr. 787]; *Williams* v. *Horvath* (1976) 16 Cal.3d 834 [129 Cal.Rptr. 453, 548 P.2d 1125].)

▪ Because of plaintiff's failure to comply with Government Code section 911.2, we conclude that the trial court properly granted summary judgment in favor of defendants and need not reach the other issues.

### DISPOSITION

The trial court's summary judgment in favor of defendants is affirmed.

Devich, J., and Ortega, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 22, 1989.