[No. B091837. Second Dist., Div. One. May 22, 1996.]

GREGG PHOTIAS, Plaintiff and Appellant, v.
WARREN T. DOERFLER, Defendant and Respondent.

**COUNSEL**

Robert Packer and Thomas Kallay for Plaintiff and Appellant.

Tuverson & Hillyard and Michael A. Coletti for Defendant and Respondent.

**OPINION**

**SPENCER, P. J.—**

### INTRODUCTION

Plaintiff Gregg Photias appeals from a summary judgment entered in favor of defendant Warren T. Doerfler, M.D., after the trial court found that plaintiff's cause of action was barred by the statute of limitations.

### PROCEDURAL AND FACTUAL BACKGROUND

In 1971, when plaintiff was approximately six months old, defendant noted that plaintiff's right testicle was "high" and his left testicle was "not palpable." The condition continued through 1975, during which period defendant provided plaintiff's general medical care and treatment. Defendant saw plaintiff only once after 1975 or 1976; he treated him for a skin rash on July 10, 1984.

Plaintiff applied for part-time employment at Antelope Valley Hospital Medical Center in December 1988. A preemployment physical examination revealed that plaintiff's testicles had not descended. As a consequence, plaintiff had a bilateral orchiopexy on March 13, 1989, to place the testicles within the scrotum. Following the surgery, plaintiff's semen was tested. He learned he was sterile.

Plaintiff notified defendant of his intent to sue on February 2, 1990. The instant complaint was filed on May 1, 1990. It alleges that defendant was negligent in failing to treat or remedy his undescended testicles.

### CONTENTION

 Plaintiff contends the trial court erred in granting summary judgment, in that considering plaintiff's cause of action to have accrued under

Code of Civil Procedure section 340.5 on the date of the wrongful act denies him equal protection of the law. For the reasons set forth below, we agree.

## DISCUSSION

■ The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons equal protection of the law. The guarantee "require[s] that, at a minimum, 'persons similarly situated with respect to the legitimate purpose of the law receive like treatment.' [Citations.]" (*Brown* v. *Merlo* (1973) 8 Cal.3d 855, 861 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505].) A legislative classification therefore " ' "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." ' [Citations.]" (*Ibid.*, italics omitted.) The classification " 'must involve something more than mere characteristics which will serve to divide or identify the class. There must be inherent differences in situation related to the subject-matter of the legislation . . . .' [Citation.]" (*Young* v. *Haines* (1986) 41 Cal.3d 883, 900 [226 Cal.Rptr. 547, 718 P.2d 909].)

As amended in 1975, Code of Civil Procedure section 340.5 is part of the Medical Injury Compensation Reform Act (MICRA) (Stats. 1975, Second Ex. Sess., 1975-1976, ch. 2, § 12.5, p. 4007). The amended statute reduces the maximum limitations period for medical malpractice actions from four years to three years after the date of *injury*; this period is tolled only for fraud, intentional concealment, or the presence of nontherapeutic and non-diagnostic foreign bodies. (Code Civ. Proc., § 340.5; *Young* v. *Haines, supra,* 41 Cal.3d at p. 893.) ■ With respect to minors, the limitations period is tolled "for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor for professional negligence." (Code Civ. Proc., § 340.5.) Otherwise, an action must be brought within three years from the date of the *wrongful act* or by the minor's eighth birthday, whichever occurs later. (*Ibid.*)

Code of Civil Procedure section 340.5 "was adopted as a response to a perceived 'major health care crisis in the State of California attributable to skyrocketing malpractice premium costs and resulting in a potential break-down of the health delivery system . . . .' [Citation.]" (*Young* v. *Haines, supra,* 41 Cal.3d at p. 894.) The Legislature's intent in enacting MICRA was to "restrict the tolling provisions in malpractice actions. The 'long tail' claims, the Legislature noted, had been a contributing cause of the perceived

malpractice insurance crisis which precipitated MICRA. [Citations.]" (*Id.* at p. 896.) "Evidently, the Legislature found a relationship between the malpractice insurance crisis and the former statute of limitations. Commentators had observed that the delayed discovery rule and the resulting 'long tail' claims made it difficult to set premiums at an appropriate level. [Citations.] Presumably, the legislative goal in amending section 340.5 was to give insurers greater certainty about their liability for any given period of coverage, so that premiums could be set to cover costs." (*Id.* at p. 900.)

In *Young*, the California Supreme Court recognized that equal protection problems arise if Code of Civil Procedure section 340.5 is construed as treating minors more restrictively and harshly than adults. (*Young* v. *Haines, supra*, 41 Cal.3d at pp. 898-901.) Although not deciding the issue, the court noted that ". . . it is difficult to see how discrimination against minor malpractice plaintiffs vis-à-vis adults is rationally related to this or any other ascertainable legislative goal. The fact that such discrimination against minors would bar some meritorious claims and thereby reduce total malpractice liability is not enough to justify it. If claims are reduced in an arbitrary manner, the classification scheme denies equal protection of the law." (*Id.* at pp. 900-901.)

It is true that the Supreme Court has rejected equal protection challenges to other provisions of MICRA. In *American Bank & Trust Co.* v. *Community Hospital* (1984) 36 Cal.3d 359 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233], *Barme* v. *Wood* (1984) 37 Cal.3d 174 [207 Cal.Rptr. 816, 689 P.2d 446] and *Roa* v. *Lodi Medical Group, Inc.* (1985) 37 Cal.3d 920 [211 Cal.Rptr. 77, 695 P.2d 164], the court rejected challenges to Code of Civil Procedure section 667.7, which permits the periodic payment of medical malpractice damages awards, Civil Code section 3333.1, which prohibits a collateral source from seeking expense reimbursement from a medical malpractice defendant, and Business and Professions Code section 6146, which limits the amount of contingency fees medical malpractice plaintiffs' attorneys may receive. In each of these cases, the statute subject to challenge had no more specific objective than the overall statutory objective of MICRA—reducing the high cost of malpractice insurance premiums which the Legislature found "was (1) threatening to curtail the availability of medical care in the state and (2) creating a situation in which patients, injured by medical malpractice, might well find that there was no liability insurance to cover the damages they had sustained." (*Roa, supra*, at p. 930.)

In each instance, the Supreme Court found it "entirely rational for the Legislature to limit the application of the enacted measures to the medical malpractice field, since it was the 'crisis' in that particular area which the

Legislature hoped to alleviate." (*Roa* v. *Lodi Medical Group, Inc., supra,* 37 Cal.3d at p. 930.) In *American Bank & Trust Co.* v. *Community Hospital, supra,* the court found the periodic payment scheme of Code of Civil Procedure section 667.7 to be rationally related to the objective of reducing insurance costs, in that ". . . one of the factors which contributed to the high cost of malpractice insurance was the need for insurance companies to retain large reserves to pay out sizeable lump sum awards. The adoption of a periodic payment procedure permits insurers to retain fewer liquid reserves and to increase investments, thereby reducing the costs to insurers and, in turn, to insureds." (36 Cal.3d at pp. 372-373.)

In *Barme* v. *Wood, supra,* the court similarly found the reimbursement prohibition of Civil Code section 3333.1 to be rationally related to the cost reduction objective. "By prohibiting 'collateral sources' from obtaining reimbursement from medical malpractice defendants or their insurers, the section obviously reduces the potential liability of such defendants." (37 Cal.3d at p. 180.) This would lead to lower malpractice premiums.

Finally, in *Roa* v. *Lodi Medical Group, Inc., supra,* the court reached the same conclusion with respect to the contingency fee limitations of Business and Professions Code section 6146. The court noted, "it is unrealistic to suggest that such limits will not reduce the costs to malpractice defendants and their insurers in the large number of malpractice cases that are resolved through settlement. . . . [B]ecause section 6146 permits an attorney to take only a smaller bite of a settlement, a plaintiff will be more likely to agree to a lower settlement since he will obtain the same net recovery from the lower settlement. Accordingly, the Legislature could reasonably have determined that the provision would serve to reduce malpractice insurance costs. [¶] Second, the Legislature may also have imposed limits on contingency fees in this area as a means of deterring attorneys from either instituting frivolous suits or encouraging their clients to hold out for unrealistically high settlements. . . . [T]he Legislature could rationally have believed that unregulated contingency fee contracts . . . play at least some part in leading so many plaintiffs to pursue malpractice claims that ultimately prove unsuccessful. . . . [B]y reducing plaintiffs' attorneys' incentive to encourage their clients to pursue marginal claims, section 6146 . . . bears a rational relation to the legislative objective of reducing insurance costs." (37 Cal.3d at pp. 931-932, fn. omitted.)

As noted *ante,* in contrast to the three statutes considered in these cases, Code of Civil Procedure section 340.5 has a more specific objective situated within the larger MICRA objective. The Legislature's objective was to reduce the number of "long tail" claims attributable to the tolling provisions

formerly available in malpractice actions. (*Young* v. *Haines, supra,* 41 Cal.3d at p. 896.) These claims made it difficult for insurers to set premiums at an appropriate level. (*Id.* at p. 900.) While restricting tolling provisions and, thus, addressing the "long tail" claims attributable to those provisions is itself rationally related to the larger MICRA objective of reducing costs, the restriction is equally applicable to adults and to minors. Establishing different accrual standards for the causes of action of adults and of minors, however, does nothing to curb "long tail" claims. The practice thus has no relation to the statutory objective, a problem recognized in *Young*.

The equal protection challenges made in *American Bank & Trust Co., Barme* and *Roa* simply are not comparable to the challenge made in this case. To be comparable, the statues at issue in those cases must have discriminated among adult and minor plaintiffs. If, for example, Business and Professions Code section 6146 restricted the percentage amount of medical malpractice plaintiffs' attorneys' contingency fees generally, but then treated minors more harshly by further limiting the fee available to their attorneys, both the issue and the probable result in that case would have been similar to the instant matter. The limitation of contingency fee percentages generally would be rationally related to the overall goal of reducing malpractice insurance premiums, but there would be no rational basis for treating minors more harshly. So, too, under Code of Civil Procedure section 340.5, the general elimination of tolling provisions serves the overall goal, but there is no rational basis for treating minors more harshly.

Allowing adult causes of action to accrue on the date of injury or the date upon which the injury reasonably should have been discovered, but requiring minors' causes of action to accrue on the date of the wrongful act does treat minors more harshly in some circumstances. (*Torres* v. *County of Los Angeles* (1989) 209 Cal.App.3d 325, 333-334 [257 Cal.Rptr. 211].) ■ As noted in *Steketee* v. *Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46 [210 Cal.Rptr. 781, 694 P.2d 1153], " '[w]rongful act' and 'injury' are not synonymous. [Citations.] The word 'injury' signifies both the negligent cause and the damaging effect of the alleged wrongful act and not the act itself. [Citation.] The date of injury could be much later than the date of the wrongful act where the plaintiff suffers no physical harm until months or years after the wrongful act. [Citation.]" (*Id.* at p. 54.) The Supreme Court further noted that "[c]ourts in other jurisdictions have concluded on constitutional grounds that all medical malpractice plaintiffs must be afforded the benefit of an 'injury' standard. [Citations.]" (*Id.* at p. 54, fn. 4.)

■ In *Torres*, this court stated, "We perceive no rational basis for placing persons into different classes on the basis of criteria wholly

unrelated to the statutory objective. . . . [¶] By defining the actions of adults and minors to accrue differently, section 340.5 violates the minors' right to the law's equal protection. The adults' cause of action may accrue either from the 'date of injury' or from the time 'the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury,' whichever occurs earlier. The minors' cause of action, by contrast, accrues from the date of the 'wrongful act' rather than the injury, and the statute contains no comparable provision permitting accrual when the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury." (*Torres* v. *County of Los Angeles, supra*, 209 Cal.App.3d at p. 334.) This court therefore held that "a minor's medical malpractice cause of action . . . accrues when the minor's parent or guardian knew or should have known through the exercise of reasonable diligence that a negligent wrongful act of medical care caused the child's injuries." (*Id.* at p. 335; *Katz* v. *Children's Hosp. of Orange County* (9th Cir. 1994) 28 F.3d 1520, 1529-1533.)[1] The trial court thus erred in ruling that plaintiff's cause of action accrued on the date of the wrongful act, defendant's last treatment of him.

The question remains whether plaintiff timely brought his action after the date of his injury. In this case, the alleged injury is permanent sterility as a result of prolonged undiagnosed and untreated undescended testicles. An injury manifests itself "when it has become evidenced in some significant fashion, whether or not the patient/plaintiff actually becomes aware of the injury." (*Marriage & Family Center* v. *Superior Court* (1991) 228 Cal.App.3d 1647, 1654 [279 Cal.Rptr. 475].) Plaintiff first learned of the injury, his sterility, when his semen was tested following surgery to correct his condition. He argued that the injury first manifested itself at that time. Defendant did not contest plaintiff's claim that the injury first manifested itself after the corrective surgery, consistently taking the position that plaintiff's cause of action accrued on the date of the wrongful act. The issue thus was not fully litigated.

Plaintiff's argument is superficially attractive, but medical science might suggest otherwise. Without some degree of medical expertise, it is doubtful that this court can be certain whether sterility might have "become evidenced in some significant fashion" before plaintiff's semen was tested. (*Marriage & Family Center* v. *Superior Court, supra*, 228 Cal.App.3d at p. 1654.) We therefore express no opinion on when the injury first manifested itself, leaving the question for resolution in the trial court.

---

[1]It is immaterial that *Torres* dealt with the government claims filing statute. Application of that statute required the interpretation of Code of Civil Procedure section 340.5.

The judgment is reversed. Plaintiff is entitled to his costs on appeal.

Vogel (Miriam A.), J., and Masterson, J., concurred.