Filed 6/21/16  Forshaw v. Mubarak CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| KRISTEEN L. FORSHAW, | D067894 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00030583-CU-MM-CTL) |
| SCOTT J. MUBARAK, M.D., | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.


Kristeen L. Forshaw, in pro. per., for Plaintiff and Appellant.

Belsky & Associates, Daniel S. Belsky and Bruce W. Boetter, for Defendant and Respondent.

Plaintiff Kristeen L. Forshaw appeals a judgment in favor of defendant Scott J. Mubarak, a medical doctor who performed surgery on Forshaw's spine in 1988.  Forshaw

contends the court erred by granting Mubarak's motion for summary judgment on Forshaw's sole claim against Mubarak for medical negligence.  We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 1987, when Forshaw was 12 years old, she consulted Mubarak regarding the curvature of her spine.  Mubarak diagnosed Forshaw with idiopathic scoliosis and recommended treatment with an underarm brace.  During the next year, the curvature of Forshaw's spine worsened.  Mubarak identified Forshaw as a candidate for Cotrel-Dubousset rod placement and spinal fusion surgery to treat her scoliosis.  Mubarak discussed the surgery with Forshaw and her mother.  Because Forshaw was a minor at the time, Forshaw's mother consented to the surgery.  Mubarak performed the placement and fusion surgery in May 1988.  Mubarak's notes reflected his impression that the surgery was uneventful.  Forshaw's mother died in 2002.

In January 2013, Forshaw filed this lawsuit.  As relevant here, her operative First Amended Complaint (FAC) alleged a cause of action for medical negligence against Mubarak based on the 1988 surgery.  The FAC claimed that Mubarak failed to satisfy the standard of care in surgically implanting the rods and failed to obtain informed consent prior to Forshaw's surgery.  The FAC further claimed that Forshaw had suffered damages, including serious back and neck pain beginning in January 2012.

After over a year of litigation, Mubarak filed a motion for summary judgment. Among other things, Mubarak argued:  (1) Forshaw could not show that Mubarak was negligent in connection with the 1988 surgery; (2) Forshaw could not show that Mubarak had not obtained informed consent prior to the surgery; and (3) Forshaw's claim based on

2

informed consent was barred by the applicable statute of limitations (Code Civ. Proc., § 340.5)[1] because she suffered an allegedly undisclosed complication (muscle stiffness) soon after surgery. In support of his motion, Mubarak submitted copies of Forshaw's medical records, Forshaw's discovery responses, excerpts from Forshaw's deposition transcript, and an expert declaration from an orthopedic surgeon.

Forshaw's medical records provided details of Forshaw's condition, her diagnosis of idiopathic scoliosis, and her surgery. In one note, Mubarak wrote that he had discussed the risks and benefits of surgery with Forshaw and her mother, including "the possibility of spinal cord injury, anesthetic death, blood loss, infection, rod dislodgement and nonunion." The records also contained a surgical consent form signed by Forshaw's mother. The consent form included the following advisement: "These operations and procedures may all involve risks of unsuccessful results, complications, injury, or even death, from both known and unforeseen causes, and no warranty or guarantee is made as to result or cure." The consent form also stated: "Your signature below constitutes your acknowledgment . . . that the operation or procedure set forth below has been adequately explained to you by your supervising physician or surgeon and by your anesthesiologist and that you have received all of the information you desire concerning such operation or procedure . . . ."

In excerpts from Forshaw's deposition transcript, she denied that Mubarak had discussed any risks, complications, or other side effects of surgery. For example,

---

[1]     Further statutory references are to the Code of Civil Procedure.

3

Forshaw testified, "He did -- he did not even tell me about the muscular stiffness which began fairly quickly after surgery. I can remember as a teenager experiencing muscular stiffness." Forshaw also compiled a "List of Misrepresentations" for her deposition. This list included the fact that Mubarak did not tell her muscle stiffness was a potential long-term complication of surgery. Forshaw testified that she complained to Mubarak during a follow-up appointment that she was experiencing muscle stiffness. Forshaw's last follow-up appointment was in November 1990.

Mubarak's expert declaration assessed Mubarak's treatment of Forshaw. The expert concluded that Mubarak complied with the standard of care, including obtaining informed consent and performing the surgery itself. Mubarak's expert also concluded any pain Forshaw currently suffered was unrelated to her 1988 surgery.

Forshaw opposed Mubarak's summary judgment motion and objected to Mubarak's evidence on various grounds. Forshaw argued triable issues of fact precluded summary judgment on either statute of limitations or informed consent grounds. Forshaw did not contest Mubarak's argument that the surgery itself had not been negligently performed. In opposition to Mubarak's motion, Forshaw submitted an expert declaration from an orthopedic surgeon, her own declaration, excerpts from her deposition transcript, and excerpts from Mubarak's deposition transcript.

Forshaw's expert declaration criticized the conclusions of Mubarak's expert and concluded that Mubarak had not satisfied the standard of care in obtaining informed consent for Forshaw's spine surgery. Forshaw's expert also disagreed with Mubarak's expert's conclusion that Forshaw's pain was unrelated to her 1988 surgery. The expert

4

stated that Forshaw's surgery exacerbated her risk of spinal and disc degeneration. Forshaw's expert also opined that her current pain was unrelated to any muscle stiffness Forshaw experienced after surgery. And, in any event, Forshaw's expert believed that Mubarak should have disclosed his possible negligence when Forshaw told him about her muscle stiffness.

In her declaration, Forshaw said her mother had discussed everything she knew about the surgery with her. Based on their discussions with Mubarak, Forshaw and her mother believed that Forshaw's scoliosis could have potentially fatal complications if Forshaw did not have surgery. Forshaw said she last consulted with Mubarak in 1990, when she was 15 years old, and she expressed concerns about how she felt after the surgery. Mubarak told Forshaw the surgery had gone well. Forshaw stated that she discussed her postoperative situation with her mother and her mother had no concerns.

Mubarak objected to Forshaw's evidence on numerous grounds. At the hearing on Mubarak's motion, the trial court sustained Mubarak's objections to portions of Forshaw's declaration discussing her mother's state of mind at the time of the surgery and her impression of what her mother would have done if Mubarak had fully disclosed the risks and benefits of surgery. The court also sustained Mubarak's objections to similar portions of Forshaw's expert's declaration. The court sustained one of Forshaw's evidentiary objections, to a portion of Mubarak's expert's declaration, and overruled the remainder.

Given these evidentiary rulings, the court granted Mubarak's motion. It found that Mubarak met his initial burden to show that Forshaw's mother gave consent to the

5

surgery, that Forshaw's mother would not have declined to consent if fully advised of the risks, and that Mubarak complied with the standard of care in performing the surgery itself. The court further found that Forshaw had not raised a triable issue of fact as to any of these issues. As to the first issue, the court wrote, "There is no competent evidence that [Forshaw's mother], the person who authorized [Forshaw's] surgery, ever thought that she had not been fully informed of the benefits of the proposed surgery, the risks of surgery, or the alternatives to surgery." The court also determined, as to the second issue, that "[Forshaw] can produce no evidence to show that consent to treatment would not have been given by her mother." As to the last issue, the court noted that Forshaw did not dispute that Mubarak had properly performed the surgery itself, and any general statements by Forshaw's expert on that topic were insufficient to raise a triable issue of fact. In light of these findings, the court did not address Mubarak's argument based on the statute of limitations. The court entered judgment in favor of Mubarak, and Forshaw appeals.

## DISCUSSION

We review an order granting summary judgment de novo, using the same standards applicable to the trial court. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.) "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier to fact to find the underlying fact in

6

favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*), footnotes omitted.)  "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto."  (*Ibid.*)  "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact."  (*Ibid.*)  "A prima facie showing is one that is sufficient to support the position of the party in question."  (*Id.* at p. 851.)

"In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor."  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)  Here, as in the trial court, "[t]he court may not 'grant[ ]' the defendants' motion for summary judgment 'based on inferences . . . , if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.' [Citation.]  Neither, apparently, may the court grant their motion based on any evidence from which such inferences are drawn, if so contradicted.  That means that, if the court concludes that the plaintiff's evidence or inferences raise a triable issue of material fact, it must conclude its consideration and deny the defendants' motion.  [¶]  But, even though

7

the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, it must nevertheless determine what any evidence or inference *could show or imply to a reasonable trier of fact*. . . . In so doing, it does not decide on any finding of its own, but simply decides what finding such a trier of fact could make for itself." (*Aguilar, supra*, 25 Cal.4th at p. 856.)

"We are not bound by the issues actually decided by the trial court. 'The appellate court should affirm the judgment of the trial court if it is correct on any theory of law applicable to the case, including but not limited to the theory adopted by the trial court, providing the facts are undisputed. [Citations.] Thus we must affirm so long as any of the grounds urged by [defendants], either here or in the trial court, entitle [them] to summary judgment.' " (*Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1498; see *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.)

As we have noted, the trial court here found no triable issues of fact on the substance of Forshaw's medical negligence claim against Mubarak and did not reach Mubarak's argument based on the statute of limitations, section 340.5. Forshaw's opening brief in this court is directed to the trial court's reasoning. In his respondent's brief, Mubarak addresses the issues raised in Forshaw's opening brief but also urges this court to affirm on alternative grounds, including the statute of limitations. Forshaw did not file a reply brief. For reasons we will explain, we conclude Mubarak is entitled to summary

judgment on the ground that Forshaw's claim is barred by the applicable statute of limitations. We will therefore affirm the judgment.[2]

The statute of limitations provides, in relevant part, as follows: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period." (§ 340.5.)

On its face, the statute establishes a general statute of limitations with a specific, and in some cases more restrictive, limitations period for minors. Courts have found this distinction impermissible under constitutional equal protection principles. "By defining the causes of action of adults ('three years after the date of injury' or one year after discovery) and minors ('within three years from the date of the alleged wrongful act') to

---

[2]     Forshaw appears in propria persona in this court. Unrepresented parties are held to the same standards, and are entitled to the same consideration, as represented parties. (See *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.)

9

accrue differently, section 340.5 violates the minors' right to the law's equal protection—and for this reason has been interpreted to give minors the benefit of the same provisions as adults." (*Arredondo v. Regents of the University of California* (2005) 131 Cal.App.4th 614, 618 (*Arredondo*); see *Torres v. County of Los Angeles* (1989) 209 Cal.App.3d 325, 334.)

Given these equal protection concerns, courts have interpreted the statute of limitations applicable to minors as running for three years from the date of injury, rather than from the date of the wrongful act. (*Arredondo, supra*, 131 Cal.App.4th at p. 618; see *Katz v. Children's Hospital of Orange County* (9th Cir. 1994) 28 F.3d 1520, 1533.) Mubarak contends, as in the trial court, that this three-year period applies to bar Forshaw's cause of action.[3]

" 'Wrongful act' and 'injury' are not synonymous. [Citations.] The word 'injury' signifies both the negligent cause and the damaging effect of the alleged wrongful act and not the act itself. [Citation.] The date of injury could be much later than the date of the wrongful act where the plaintiff suffers no physical harm until months or years after the wrongful act." (*Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46, 54.) However, once a plaintiff suffers appreciable harm, she has suffered an injury under the statute regardless of whether the plaintiff suspects it was caused by any wrongdoing. " '[The] three year provision "provides an outer limit which terminates all malpractice liability and it commences to run when the patient is aware of the physical manifestations

---

3    Because Mubarak does not raise the one-year period under section 340.5, we need not consider whether and in which circumstances it may apply to minors.

10

of [his] injury *without regard to awareness of its negligent cause*." ' " (*Garabet v. Superior Court* (2007) 151 Cal.App.4th 1538, 1551.)

"An injury manifests itself 'when it has become evidenced in some significant fashion, whether or not the patient/plaintiff actually becomes aware of the injury.' " (*Photias v. Doerfler* (1996) 45 Cal.App.4th 1014, 1021; see *Marriage & Family Center v. Superior Court* (1991) 228 Cal.App.3d 1647, 1654.) "Significant" in this context means an actionable harm. As a court noted in another context, " ' "[Where] an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date . . . ." ' " (*Spellis v. Lawn* (1988) 200 Cal.App.3d 1075, 1080-1081, italics omitted.)

As the basis for her medical negligence cause of action, Forshaw alleges Mubarak failed to properly obtain informed consent from her mother because he did not disclose any risks or potential complications prior to Forshaw's surgery. "[W]hen the patient [or, here, her parent or guardian] consents to certain treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence." (*Cobbs v. Grant* (1972) 8 Cal.3d 229, 240-241.) In this context, the injury necessary for the statute of limitations to begin to run is the manifestation of a

11

complication or side effect that should have been disclosed but was not. (*Warren v. Schecter* (1997) 57 Cal.App.4th 1189, 1201-1202 (*Warren*).)

In support of his summary judgment motion, Mubarak offered evidence that an allegedly undisclosed complication—muscle stiffness—manifested itself soon after Forshaw's surgery. In a deposition, Forshaw was asked, "Did [Mubarak] tell you any of the possible side effects or things that you might experience as a result of the surgery?" Forshaw answered, "He did -- he did not even tell me about the muscular stiffness which began fairly quickly after surgery. I can remember as a teenager experiencing muscular stiffness." Forshaw also compiled a "List of Misrepresentations" for her deposition. This list included the fact that Mubarak did not tell her that muscle stiffness was a potential long-term complication of surgery. Forshaw testified that she complained to Mubarak during a follow-up appointment that she was experiencing muscle stiffness. Forshaw's last follow-up appointment was in November 1990.

This evidence shows that Forshaw's muscle stiffness, an allegedly undisclosed complication or side effect of Forshaw's surgery, arose in November 1990 at the latest. Because this muscle stiffness was an appreciable, actionable harm, Forshaw suffered injury at that time and the three-year statute of limitations began to run. (See *Warren, supra*, 57 Cal.App.4th at pp. 1201-1202.) Forshaw therefore had until November 1993 to file this action. Because she did not file her complaint until January 2013, her cause of action for medical negligence against Mubarak is barred by section 340.5.

In the trial court, Forshaw did not directly contest this evidence. Instead, she disputed whether this evidence triggered the statute of limitations under the

12

circumstances of this case. Although Forshaw has not filed a reply brief in this court responding to Mubarak's arguments regarding statute of limitations, in the interest of full consideration we will exercise our discretion and address Forshaw's arguments in the trial court on this issue.

Below, Forshaw argued generally that muscle stiffness was a normal outcome of surgery, which Mubarak characterized as not medically significant. Forshaw claimed, therefore, that the statute of limitations did not begin to run in November 1990. We disagree. The statute began to run when Forshaw suffered an injury under section 340.5. An injury, in the context of Forshaw's claim for medical negligence based on lack of informed consent, is the occurrence of an undisclosed complication or side effect of surgery. (*Warren, supra*, 57 Cal.App.4th at pp. 1201-1202.) An actionable complication or side effect can be a normal outcome of surgery, if it was undisclosed and constitutes harm. Because, according to Forshaw, muscle stiffness was an undisclosed adverse outcome or side effect of her surgery, its manifestation was an injury that triggered the running of the statute of limitations. Similarly, Mubarak's opinion that Forshaw's muscle stiffness was not medically significant likewise has no effect on the statute of limitations. An injury need not be medically significant to begin the three-year limitations period; it need only be actionable. Muscle stiffness, if incurred as a result of the wrongful act of another, is plainly actionable in tort. It therefore was a sufficient injury to commence the statute of limitations.

Forshaw also argued in the trial court that, if her muscle stiffness was actionable, Mubarak concealed this fact from her by describing her muscle stiffness as not medically

13

significant and by not telling her he might have been negligent. "[I]ntentional concealment"—but not mere nondisclosure—may toll the three-year statute of limitations under section 340.5. (*Young v. Haines* (1986) 41 Cal.3d 883, 901.) Forshaw's allegations regarding Mubarak's conduct, even if fully credited, do not amount to intentional concealment. Mubarak did not misrepresent or conceal any material facts from Forshaw or her mother after surgery. Forshaw's injury was apparent, and Mubarak did not deny that Forshaw was experiencing muscle stiffness. His statement that the stiffness was not medically significant merely judges its seriousness; it had no bearing on whether the stiffness would be actionable or not. Similarly, Mubarak's failure to affirmatively discuss his potential negligence was at most a nondisclosure; it did not conceal a potential cause of action against him. The facts surrounding a potential cause of action, such as Mubarak's pre-surgery statements and the manifestation of an allegedly undisclosed complication, were not affected by Mubarak's silence on the issue of his potential negligence. As we have noted, the statute of limitations began to run when Forshaw's injury was first manifested, not when Forshaw (or her mother) first became aware of Mubarak's potential negligence.

Below, Forshaw also claimed that the statute of limitations should not apply in this case because she was a minor at the time of her surgery and postsurgical consultations. Forshaw argued that only her mother would have been aware of any negligence by Mubarak because she was in direct discussions with him regarding the risks and complications of Forshaw's surgery. But, again, discovery of the negligent cause of Forshaw's muscle stiffness is not required for the statute of limitations to commence; it is

14

sufficient that Forshaw's injury manifested itself. (See *Arredondo, supra*, 131 Cal.App.4th at p. 619 [rejecting argument that statute of limitations did not commence until plaintiff's mother discovered the negligent cause of plaintiff's injury]; see also *Photias v. Doerfler, supra*, 45 Cal.App.4th at p. 1021 [holding that the physical manifestation of injury, not the plaintiff's awareness of it, was the determinative date for purposes of the statute of limitations].) Here, Forshaw's injury manifested itself in November 1990 at the latest. The three-year statute of limitations under section 340.5 commenced at that time.

Forshaw contended that the muscle stiffness she experienced resolved itself a number of years after surgery and her current complaints are unrelated to that condition. As we have explained, however, it is sufficient that a plaintiff suffer *some* injury for the statute of limitations to commence. It is irrelevant that additional injuries have yet to be suffered, or that the later injuries are more significant. (*Spellis v. Lawn, supra*, 200 Cal.App.3d at pp. 1080-1081.) The manifestation of an injury stemming from the alleged wrongdoing is sufficient to start the three-year limitations period. The muscle stiffness Forshaw suffered in 1990 was an injury under section 340.5 and therefore began its three-year limitations period.

Given our conclusion, we need not consider the other grounds on which the trial court granted Mubarak's summary judgment motion or the additional alternative grounds

15

for affirmance Mubarak urges on appeal.  We also need not consider Forshaw's claims of error with respect to the trial court's stated grounds.[4]

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

---

[4]     We note that Forshaw additionally contends the trial court erred by overruling almost all of her objections to the evidence Mubarak submitted in support of his summary judgment motion.  Forshaw's sole contention on appeal appears to be that the trial court did not adequately explain why it overruled Forshaw's objections.  Forshaw provides no authority for her implied argument that the trial court must provide its reasoning in connection with an evidentiary ruling in connection with a summary judgment motion, and we are aware of none.  Even if we were to reach the substance of Forshaw's objections, they do not implicate the factual basis for Mubarak's statute of limitations argument.  Any error in denying Forshaw's objections would therefore have no effect on Mubarak's evidentiary showing on this issue.  Similarly, Forshaw's additional argument that the trial court erroneously sustained a number of objections to Forshaw's evidence, even if valid, does not affect the state of the evidence with respect to the statute of limitations.  Even had this evidence been admitted, summary judgment on the ground of statute of limitations would still be proper.

16